UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

**JAMELLA ROLLE**, individually, and on behalf of others similarly situated,

      Plaintiffs,

vs.

**TPUSA, INC. and TPUSA-FHCS, INC.**
d/b/a **TELEPERFORMANCE,**
Delaware Corporations,

      Defendants.

Case No.

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Jamella Rolle, individually and on behalf of all others similarly situated, by and through her attorneys, hereby bring this Collective and Class Action Complaint against Defendants, TPUSA, Inc. and TPUSA-FHCS, Inc., and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Jamella Rolle, individually and on behalf of all similarly situated persons (collectively referred to herein as "Plaintiffs") employed by Defendants, TPUSA, Inc. and TPUSA-FHCS, Inc., d/b/a Teleperformance (referred to herein as "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and Florida contract law.

2. Defendants offer call center services to their clients and employed workers to receive and respond to customer calls on behalf of those clients. In order to provide these services, Defendants employed call center agents ("Agents") as hourly, non-exempt employees. Agents

were employed in specific job titles including, but not limited to, customer service agent, insurance agent, member services customer care agent, and captioning agent.

3. Defendants required their Agents to work a full-time schedule, often including overtime. However, Defendants did not compensate their Agents for all work performed; instead, Defendants only paid their Agents for the time spent on the telephone and available to accept calls. This practice resulted in Agents not being paid for all time worked and for all of their overtime in violation of the FLSA.

4. Defendants' Agents used multiple computer networks, software programs, and applications in the course of performing their responsibilities. These programs and applications were an integral and important part of their work as they could not perform their job without them.

5. Defendants' Agents performed the same basic job duties and were required to use the same or similar computer networks, software programs, applications, and phone systems.

6. Defendants knew or could have easily determined how long it took for each Agent to complete the pre-shift startup and login process and Defendants could have properly compensated Plaintiffs and the Class for the start-up and log-in work they performed, but did not. Defendants also knew or could have easily determined or tracked how long it took for each Agent to complete the post-shift computer logout and shutdown process, and Defendants could have paid Plaintiffs and the Class for the post-shift computer log-out and shutdown work they performed, but did not.

7. Plaintiffs bring this action to recover unpaid wages and overtime, liquidated damages, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

9. Additionally, this Court has jurisdiction over Plaintiffs' FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10. Defendants' annual sales exceeded $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' Agents engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

11. This Court has personal jurisdiction over Defendants because they did business within the state of Florida and were registered with the Florida Secretary of State.

12. Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as Plaintiffs' federal law claims.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employed Agents in this district, and a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this district.

## PARTIES

14. Plaintiff, Jamella Rolle, is a resident of Fort Pierce, Florida. She was employed by Defendants as an hourly Agent in Port St. Lucie, Florida from October 2016 to December 2016, and signed a consent form to join this collective action lawsuit, which is attached as ***Exhibit A***.

15. Additional Opt-In Plaintiffs were or are still employed by either or both Defendants as hourly Agents during the past three years and their consent forms will also be filed in this case.

16. Defendants, TPUSA, Inc. and TPUSA-FHCS, Inc., are Delaware corporations that provide call center services and "connect the biggest and most respected brands on the planet with their customers by providing customer care, technical support, customer acquisition, digital solutions, analytics, back-office and other specialized services to ensure consistently positive customer interactions."[1]

17. "Teleperformance is the number one contact center and client relationship management company in the world. Founded in 1978, the Company operates nearly 147,000 computerized workstations, with more than 190,000 employees across 311 contact centers in 65 countries."[2]

18. In the United States, Defendants maintain and operate approximately 30 brick-and-mortar call centers in approximately 20 states.[3]

19. Defendants are registered to do business in Florida and can be served through their shared registered agent, CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

**GENERAL ALLEGATIONS**

20. According to Defendants' employee handbook, "[a] basic part of TPUSA's philosophy is the belief that our employees are the most important assets of our Company. It is our employees who have made TPUSA's success possible, and they are the key to the Company's future." Defendants are in possession of this document.

---

[1] *See* https://www.teleperformance.com/en-us/people-company/about-us (last visited May 12, 2017).

[2] See http://www.jobs.net/jobs/teleperformance-us/en-us/job/United-States/Customer-Service-Captioning-Agent/J3H5HR6K5W3Y6H5L8MM/ (last visited May 12, 2017).

[3] *See* http://www.teleperformanceusa.com/en-us/united-states/locations (last visited May 12, 2017).

21. Defendants' Agents' job duties included, *inter alia*, fielding inbound calls from Defendants' clients' customers in order to respond to inquiries, providing customer service, meeting sales goals, working with confidential customer information, and to handle other issues and questions as presented by customers.

22. As an Agent, Plaintiff Rolle typically worked over 40 hours per week and was compensated at a base rate of $16.00 per hour. Defendants' other Agents were paid similar a similar hourly rate and worked similar schedules.

23. Defendants' employee handbook states that Agents "are expected to log-in and be ready to work at the start of [their] shift." However, in reality, the Agents were required to work substantial amount of unpaid time off-the-clock before and after their shifts in order to "be ready to work at the start of [their] shifts." The Agents were not paid until the start of their shifts.

**Pre-Shift Work**

24. Before the start of their shifts, Agents were required to startup and login to various computer networks and proprietary software programs and applications in order to access necessary client and customer information. The unpaid startup and login process took substantial time on a daily basis with said time ranging from 10 to 20 minutes per day, or more.

25. Defendants' Agents were not actually "clocked in" for their shifts until *after* the computer start-up and log-in process was complete and *after* they logged into the applicable programs and applications, meaning that Agents work at least 10 to 20 minutes pre-shift for which they were never compensated. This off-the-clock time worked by the Agents directly benefitted Defendants and the process was an essential part of their job responsibilities as Agents.

26. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center

employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2 (a copy of which is attached as *Exhibit B*).

27. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre- and post-shift activities: "An example of the first principal activity of the day for agents/specialists/agents working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." See *Id*., at p. 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

28. Additionally, Defendants' Agents were required to perform other pre-shift off-the-clock tasks such as reviewing call statistics, reviewing and responding to e-mails and voicemails, and meetings with supervisors.

**Mid-Shift Work**

29. Defendants' Agents often experienced technical computer issues during their shifts which caused downtime that could last 20 minutes or more.

30. In the event of a technical problem, Agents were required to clock-out and submit a "ticket" to Defendants' IT department for the issue(s) and then fill out a report for Defendants' management to approve payment for the downtime.

31. However, Defendants often failed to pay for the downtime or would credit approved downtime to a different pay period in order to avoid overtime.

**Post-Shift Work**

32. Defendants' Agents are also required to logout of and shutdown various programs

at the end of each shift. The log-out process occurs on a daily basis with said time ranging from 1 to 5 minutes per day.

33. Defendants required their Agents to "clock out" *prior* to them logging out of the computer programs, software programs, and applications, meaning that Agents worked at least 1 to 5 minutes post-shift for which they were never compensated.

34. At an estimated total of at least 11 to 25 minutes of unpaid off-the-clock work each shift, Defendants' Agents are owed substantial back pay prior to liquidation and interest.

35. Some examples of specific workweeks where Defendants failed to pay Plaintiff, Jamella Rolle, overtime for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

   a. Bi-monthly pay statement dated November 22, 2016:
      
      ➢ Plaintiff was paid for 86.57 hours over 10 shifts, including 3.9 hours of overtime (***Exhibit C***).
      
      ➢ With 10 to 25 minutes of off-the-clock time per shift, Plaintiff should have been paid an additional 110 to 250 minutes of overtime for the two-week period.
   
   b. Bi-monthly pay statement dated December 22, 2016:
      
      ➢ Plaintiff was paid for 79.06 hours over 10 shifts, including 9.83 hours of overtime (***Exhibit D***).
      
      ➢ With 10 to 25 minutes of off-the-clock time per shift, Plaintiff should have been paid an additional 110 to 250 minutes of overtime for the two-week period.

36. At all relevant times, Defendants were joint "employers" of their Agents and Defendants directed and directly benefitted from the off-the-clock work performed by their Agents.

37. At all relevant times, Defendants controlled the work schedules, duties, protocols,

applications, assignments, and employment conditions of their Agents.

38. At all relevant times, Defendants were able to track the amount of time their Agents spent starting up, logging in to, and logging out of Defendants' computer systems; however, Defendants failed to document, track, or pay their Agents for the off-the-clock work they performed.

39. At all relevant times, Defendants' Agents were non-exempt hourly employees subject to the requirements of the FLSA.

40. At all relevant times, Defendants used their attendance and adherence policies against their Agents in order to pressure them into arriving early and working off-the-clock.

41. At all relevant times, Defendants' policies and practices deprived their Agents of wages owed for the off-the-clock activities they performed. Because Defendants' Agents typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived the Agents of overtime pay.

42. Defendants knew or should have known that Plaintiffs' and other Agents' time spent starting up, logging into, and logging out of Defendants' computer systems and programs was compensable under the FLSA.

## **COLLECTIVE ACTION ALLEGATIONS**

43. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked for TPUSA, Inc. and/or TPUSA-FHCS, Inc. in the United States at any time during the applicable statutory period.*

(hereinafter referred to as the "Collective"). Plaintiffs reserve the right to amend this definition if necessary.

44. Excluded from the Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

45. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

46. The employment relationships between Defendants and every proposed Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated off-the-clock time owed to each employee – does not vary substantially among the proposed Collective members.

47. The key legal issues are also the same for every proposed Collective member, to wit: whether the 11 to 25 minutes of required off-the-clock time was compensable under the FLSA.

48. Plaintiffs estimate the Collective, including both current and former employees over the relevant period, will include several thousand members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly call center agents who worked for TPUSA, Inc. and/or TPUSA-FHCS, Inc. in the United States at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition if necessary.

50. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of putative Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

51. There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the pre-shift time Rule 23 Class members spend on startup and login activities each session is compensable time;

    d. Whether the post-shift time Rule 23 members spend on logout activities is compensable time; and

    e. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract.

52. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

53. Plaintiffs will adequately and fully protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of wage and hour class actions across the country. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

55. This case is manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and their corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

56. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

57. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

58. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

59. At all times relevant to this action, Defendants were joint employers under 29 U.S.C.

§ 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

60. Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

61. At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

62. Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

63. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

64. At all times relevant to this action, Defendants required Plaintiffs and all similarly situated employees to perform at least 11 to 25 minutes of pre-shift work, but failed to pay these employees the federally mandated overtime compensation for those services.

65. At all times relevant to this action, Defendants required Plaintiffs and all similarly situated employees to perform 1 to 5 minutes of post-shift work, but failed to pay these employees the federally mandated overtime compensation for those services.

66. The off-the-clock work performed by Plaintiffs and all similarly situated employees is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

67. In workweeks where Plaintiffs and other similarly situated employees worked 40 hours or more, the uncompensated off-the-clock work amounting to overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C.

§ 207.

68. Plaintiffs and other similarly situated employees, by virtue of their hourly pay, job duties, and activities actually performed, are all non-exempt employees.

69. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for its Agents to complete the pre- and post-shift work and Defendants could have properly compensated Plaintiffs and the Class for that work, but did not.

70. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**Count II**
**(Rule 23 Class Action)**
**BREACH OF CONTRACT**

71. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

72. At all times relevant to this action, Defendants had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

73. Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

74. Plaintiffs and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out the off-the-clock work activities that Defendants required or accepted.

75. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the off-the-clock work activities, Defendants systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

76. Plaintiffs' and the Rule 23 Class members' remedies under the FLSA could be inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

77. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing the off-the-clock work activities, which is a fundamental part of an "employer's job."

78. The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

79. As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class has been damaged, in an amount to be determined at trial.

80. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because contract law is substantially similar in all relevant states and applies to all claims.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

   a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

   b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

   c. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action FLSA Collective members, and permitting Plaintiffs to

send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Class and undersigned counsel as Class counsel for the same;

e. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants' violation of the FLSA was willful;

g. Declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h. Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Collective, and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Jamella Rolle, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: May 16, 2017

*/s/ Patrick H. Gonyea*
Patrick H. Gonyea, Esq.
Florida Bar No. 55042
Primary: patrick@mcintyrefirm.com
Secondary: nichola@mcintyrefirm.com

Richard J. McIntyre, Esquire
Florida Bar No. 0962708
rich@mcintyrefirm.com
nichola@mcintyrefirm.com
McIntyre Thanasides Bringgold
Elliott Grimaldi & Guito, P.A.
500 E. Kennedy Blvd., Ste. 200
Tampa, Florida 33602
P: (813) 223-0000/F: (813) 899-6069
*Local Counsel for Plaintiffs*

Jason J. Thompson *(Pending Pro Hac Vice)*
MI Bar No. P47184
Jesse L. Young *(Pending Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com
*Trial Counsel for Plaintiffs*